# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Wahid Masud Siddiqi,

      Petitioner

v.

Pamela Bondi, et al.,

      Respondents

Case No.: 2:25-cv-02614-JAD-BNW

**Order Granting Motion for Preliminary Injunction and Directing Immediate Release of Detainee**

[ECF No. 10]

      Petitioner Wahid Masud Siddiqi was admitted to the United States as a lawful permanent resident in 1992 but ordered removed to Afghanistan, his country of origin, in 2006.[1]  The United States was unable to secure Siddiqi's removal in 2006, so he has been living in this country at liberty and under an order of supervision issued by the Department of Homeland Security (DHS).[2]  But on November 26, 2025, Immigration and Customs Enforcement (ICE) officials arrested Siddiqi, and he has been detained at the Nevada Southern Detention Center ever since.[3]  In December of 2025, Siddiqi filed a petition for a writ of habeas corpus seeking his immediate release from custody, as well as an emergency motion for a temporary restraining order (TRO) for his release pending a decision on the habeas petition.[4]  He contends that his prolonged detention and the government's failure to provide the reason for effectively revoking his supervision order exceed the government's statutory and regulatory authority and violate his

---

[1] ECF No. 8 at 4.

[2] *Id.* at 2.

[3] *Id.* at 5.

[4] *See generally id.*

constitutional due-process rights.[5]  This court held a hearing on Siddiqi's TRO motion on Tuesday, February 24, 2026.[6]

I convert Siddiqi's motion to one for a preliminary injunction, and I grant it.  Siddiqi has shown a likelihood of success on the merits of his claim that his prolonged detention exceeds the government's statutory authority under the United States Supreme Court's opinion in *Zadvydas v. Davis*[7] and that he will suffer continued irreparable harm if he is not released.  So I direct the respondents to secure his immediate release, subject to reasonable conditions of supervision set forth in 8 U.S.C. § 1231(a)(3).  I do not require that Siddiqi post a bond securing his release.

## Background

Wahid Masud Siddiqi is an Afghani citizen and entered the United States in 1992 purportedly to escape political unrest in Afghanistan.[8]  He was ordered removed in 2006 and detained.[9]  Approximately 94 days later, he was released under an order of supervision because his removal could not be effectuated.[10]  On November 26, 2025, ICE arrested and re-detained him.[11]  He alleges that he did not receive an informal interview stating the basis of this renewed detention.[12]  Siddiqi thus filed a petition for a writ of habeas corpus requesting his release

---

[5] *See generally id.*

[6] ECF No. 19.

[7] *Zadvydas v. Davis*, 533 U.S. 678 (2001).

[8] ECF No. 8 at 4.

[9] *Id.* at 2.

[10] *Id.* at 2, 5.  Siddiqi's counsel represented during the hearing that this first period of confinement was for 94 days.

[11] *Id.* at 5.

[12] *Id.* at 17.

1  because he contends that his detention violates the United States Supreme Court's directives in

2  *Zadvydas* and ICE violated its own applicable statutes and regulations.[13]

3       The government counters that 8 U.S.C. § 1252(g) and § 1252(b)(9) strip this court of

4  jurisdiction over this claim.[14]  The government also argues that Siddiqi's prolonged-detention

5  claim fails under *Zadvydas* because his "current detainment is valid" and presumptively

6  reasonable because he has only been re-detained for three months so "it is within the 6-month

7  period."[15]  The government also contends that Siddiqi's deportation is reasonably foreseeable

8  because there has been a recent uptick in removals to Afghanistan.[16]

9  **Discussion**

10  **A.    This court has jurisdiction to order relief related to Siddiqi's habeas petition.**

11       The constitution provides that a writ of habeas corpus is "available to every individual

12  detained in the United States."[17]  That writ permits a person who is in custody to challenge the

13  legality of his detention, and the court has the authority to release the petitioner if it determines

14  that he is illegally detained.  The court's habeas jurisdiction encompasses a noncitizen's

15  challenge to his detention under the United States' immigration laws.[18]

16       The government sees it differently.  It argues that this court is without jurisdiction

17  because § 1252(g) bars district courts from reviewing the decision to "[c]ommence proceedings,

18

19

---

20  [13] *Id.* at 14–18.

21  [14] ECF No. 16 at 7–11.

    [15] *Id.* at 3, 11

22  [16] *Id.* at 12–13 (citing ECF No. 16-4).

23  [17] *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art 1, § 9, cl. 2).

    [18] *Zadvydas*, 533 U.S. at 687; *Demore v. Kim*, 538 U.S. 510, 517 (2003).

adjudicate cases, or execute removal orders" [19] and § 1252(b)(9) channels review of final orders of removal to the federal courts of appeals.[20]  But the government's § 1252(g) argument is unavailing.  Courts have habeas jurisdiction to consider challenges to the lawfulness of immigration-related detention.[21]  And "§ 1252(g) does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders."[22]  Rather, § 1252(g) is a "narrow" "discretion-protecting provision"[23] that bars challenges only to the three discrete actions enumerated in the statute.[24]  The government's § 1252(b)(9) argument fares no better.  § 1252(b)(9) similarly does not present a jurisdictional bar when petitioners are not "asking for review of an order of removal," "challenging the decision to detain them in the first place or to seek removal," or "challenging any part of the process by which their removability will be determined."[25]  Siddiqi does not challenge the decision to commence the removal proceeding or to execute the removal order, but rather ICE's decision to detain him indefinitely. So this court has jurisdiction to review his petition and this motion.

---

[19] 8 U.S.C. § 1252(g).

[20] *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1035 (9th Cir. 2016).

[21] *See Zadvydas*, 533 U.S. at 687.

[22] *Ibarra-Perez v. United States*, 154 F.4th 989, 997 (9th Cir. 2025).

[23] *Id.* at 996.

[24] *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) ("The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'").

[25] *Jennings v. Rodriguez*, 583 U.S. 281, 294–95 (2018).

**B.**     **This nation's immigration laws permit a noncitizen's detention pending removal, but the United States Supreme Court has held that the detention period should not exceed six months without a significant likelihood of removal in the reasonably foreseeable future.**

      **1.**     *The government has authority to detain noncitizens after they have been ordered removed.*

The Immigration and Nationality Act (INA) and its implementing regulations establish a complex set of rules governing the government's authority to arrest, detain, order removed, and deport noncitizens.  8 U.S.C. § 1231(a) governs the detention of noncitizens who have been ordered removed.  It establishes a 90-day "removal period" that begins on "(i) the date the order of removal becomes administratively final, (ii) if the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order," or the date the noncitizen is released from non-immigration detention.[26]  During that 90-day period, detention is mandatory.[27]  The statute gives the government the ability to detain a noncitizen beyond that removal period under § 1231(a)(6) if he is inadmissible, removable "as a result of violations of status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy,"[28] or has been determined "to be a risk to the community or unlikely to comply with the order of removal."[29]  If those conditions aren't met, the government may release the noncitizen "subject to certain terms of supervision."[30]

---

[26] 8 U.S.C. § 1231(a)(1)(B).

[27] 8 U.S.C. § 1231(a)(2)(A).

[28] *Zadvydas*, 533 U.S. at 682.

[29] 8 U.S.C. § 1231(a)(6).

[30] *Zadvydas*, 533 U.S. at 682 (quoting 8 U.S.C. § 1231(a)(6)) (cleaned up).

2.    ***The due-process clause of the U.S. Constitution prohibits the government from indefinitely detaining noncitizens pending removal.***

Section 1231(a)(6) does not itself limit the length of time that a noncitizen may be held post-removal period.  But in *Zadvydas v. Davis*, the United States Supreme Court rejected the government's contention that noncitizens can be held indefinitely under § 1231(a)(6) because that interpretation "would raise a serious constitutional problem" under the Fifth Amendment's due-process clause.[31]  To avoid its constitutional concerns, the High Court interpreted the statute to permit continued detention only if a noncitizen's removal is "reasonably foreseeable."[32]  It determined that six months of post-removal-period detention is presumptively reasonable.[33]  But after six months, the noncitizen must "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" to show that his prolonged detention exceeds the government's statutory authority and that he should be released from ICE custody.[34]  If the noncitizen meets that burden, "the government must respond with evidence sufficient to rebut that showing."[35]  And as "the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink."[36]

---

[31] *Id.* at 690.

[32] *Id.* at 699.

[33] *Id.* at 701.

[34] *Id.*

[35] *Id.*

[36] *Id.* (cleaned up).

**C.      TROs and preliminary injunctions require a showing that the petitioner is likely to succeed on the merits of his claims and will suffer irreparable harm if relief is not granted.**

A temporary restraining order or preliminary injunction is an "extraordinary" remedy "never awarded as of right."[37]  The Supreme Court clarified in *Winter v. Natural Resources Defense Council, Inc.* that, to obtain an injunction, plaintiffs "must establish that [they are] likely to succeed on the merits, that [they are] likely to suffer irreparable injury in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest."[38]  The Ninth Circuit recognizes an additional standard: if "plaintiff[s] can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiffs' favor,' and the other two *Winter* factors are satisfied."[39]

The respondents were given notice of Siddiqi's TRO motion, as well as an opportunity to respond and to be heard at an in-person hearing.  I thus sua sponte convert the motion into one for a preliminary injunction.[40]  The standard for both forms of relief is the same, the parties were given notice and a hearing, and the nature of the relief granted by this case is more properly addressed by a preliminary injunction.

---

[37] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

[38] *Id.* at 20.

[39] *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).

[40] *See* Fed. R. Civ. P. 65 (distinguishing between a temporary restraining order and a preliminary injunction based on notice and the responding party's ability to be heard).

**D.    Siddiqi has shown that he is likely to succeed on his prolonged-detention claim.**

   *1.    Siddiqi has provided good reasons to believe that he will not be removed in the reasonably foreseeable future.*

Siddiqi has shown a likelihood of success on his prolonged-detention claim. The parties agree that the *Zadvydas* burden-shifting framework triggers at six months,[41] but they dispute whether Siddiqi's multiple periods of detention mean he has been detained for six months under *Zadvydas*.[42] District courts within the Ninth Circuit have seemingly reached a consensus that the period of post-final removal order detention is at least cumulative.[43] Otherwise, the government could detain, release, and re-detain noncitizens ad nauseam without technically violating *Zadvydas*.[44] The sole unpublished, out-of-circuit district court case that the Government cites in its response rejected only the notion that the six-month clock runs after the final order of removal regardless of whether the noncitizen is detained or not.[45] It did not address whether a detainee's time in detention should be aggregated under *Zadvydas*.[46] So I find that Siddiqi has been

---

[41] *Zadvydas*, 533 U.S. at 701.

[42] *See* ECF Nos. 10, 16.

[43] *See, e.g.*, *Nguyen v. Warden of Golden State Annex Det. Facility*, 2026 WL 292874, at *2 (E.D. Cal. Feb. 4, 2026) (collecting cases).

[44] *See, e.g.*, *Shalala v. Mattos*, 2025 WL 3568234, at * 6 (D. Nev. Dec. 14, 2025) (considering the "full amount of time that Petitioner has spent in immigration detention since he was ordered removed" because "[o]therwise, the government could simply circumvent the INA by releasing and re-detaining citizens such that they never reach six months of continuous detention"); *Nguyen v. Scott*, 796 F. Supp. 703, 722 (W.D. Wash. 2025) (noting that, "under the reasoning of *Zadvydas*, a series of releases and re-detentions by the government . . . in essence results in an indefinite period of detention, albeit executed in successive six-month intervals").

[45] ECF No. 16 at 12 (citing *Tanha v. Warden, Baltimore Det. Facility*, 2025 WL 2062181 (D. Md. July 22, 2025)).

[46] *See Tanha*, 2025 WL 2062181, at *7 ("It strikes this court as an illogical, if not unreasonable, extension of *Zadvydas* to suggest that where the Government, as it did here, issues a non-citizen an OSUP, the 6-month post-removal period clock nonetheless starts to tick while the non-citizen is release.").

1  detained in the aggregate for longer than six months based on his 2006 detention and his recent

2  re-detention, taking this case out of the presumptively reasonable period of detention established

3  by *Zadvydas*.

4          Siddiqi thus bears the initial burden of showing that there are "good reasons to believe

5  that there is no significant likelihood of removal in the reasonably foreseeable future."[47]  To

6  meet his burden, Siddiqi submits that he was ordered removed in 2006 and ICE has been unable

7  to remove him for approximately two decades.[48]  Siddiqi also alleges that ICE cannot remove

8  him to Afghanistan and that ICE has previously been unable to obtain travel documents for

9  him.[49]  Siddiqi's counsel represented at the hearing that part of the issue is that "Afghanistan

10 doesn't recognize him," and that Siddiqi was told just this month by ICE that Afghanistan won't

11 authorize travel documents for him.  From these facts I can conclude that Siddiqi is likely to

12 succeed in showing that he has good reasons to believe he will not be removed any time soon.

13         The government fails to meet its shifted burden to "respond with evidence"[50] rebutting

14 Siddiqi's showing.  The only evidence that the government cites in support is some generalized

15 data showing that ICE deported individuals to Afghanistan during the years 2023-2025.[51]  At the

16 hearing, counsel for the government stated that the government contacted the Afghani embassy,

17 but learned only that Siddiqi's case is still pending and there has been no movement on it.

18 Counsel otherwise conceded that no other evidence supports the contention that Siddiqi will be

19 removed in the reasonably foreseeable future.  The government's highly generalized,

20

---

21 [47] *Zadvydas*, 533 U.S. at 701.

   [48] ECF No. 8 at 14.

22 [49] *Id.* at 5.

23 [50] *Zadvydas*, 533 U.S. at 701.

   [51] ECF No. 16 at 12–13 (citing ECF No. 16-4).

unparticularized evidence coupled with the "still pending" status at the embassy does not meet

the government's burden to show that there is a significant likelihood that Siddiqi himself will be

removed in the reasonably foreseeable future.  I thus find that Siddiqi is likely to prevail on the

merits of his prolonged-detention claim.

**E.      Siddiqi has established irreparable harm.**

"It is well established that the deprivation of constitutional rights 'unquestionably

constitutes irreparable injury.'"[52]  The Ninth Circuit has also recognized that "unlawful detention

certainly constitutes extreme or very serious" injury that "is not compensable in damages."[53]  I

find that Siddiqi's continued deprivation of liberty and the violation of his due-process rights as

reflected in *Zadvydas* establish that he will continue to suffer irreparable harm if he is not

released from custody.

**F.      The balance of equities and public interest tip sharply in Siddiqi's favor.**

The last two *Winter* factors merge when the government is the opposing party.[54]  Siddiqi

has shown that the harm of his continued deprivation sharply outweighs the government's

minimal hardship caused by releasing him under conditions of supervision like those that he has

been subject to for years.  The government's interest in enforcing immigration laws does not tip

the scales for the government, especially when the petitioner has shown that his immigration

detention is likely unlawful.[55]

---

[52] *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

[53] *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017) (cleaned up).

[54] *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

[55] *See Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022) (recognizing that "neither equity nor the public's interest are furthered by allowing violations of federal law to continue").

**G.      The court declines to impose a bond requirement.**

"Federal Rule of Civil Procedure 65(c) permits a court to grant preliminary injunctive relief 'only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by the party found to have been wrongfully enjoined or restrained.'"[56] "Despite the seemingly mandatory language, Rule 65(c) invests the district court with discretion as to the amount of security required, if any."[57]  Neither party addresses the bond issue.  Because the government does not provide any argument concerning costs and damages it might sustain, and I am convinced that it will not incur any such damages if it was wrongfully enjoined, I join the growing number of courts that decline to require a bond in cases like this.[58]

### Conclusion

IT IS THEREFORE ORDERED that petitioner Wahid Masud Siddiqi's emergency motion for a temporary restraining order **[ECF No. 10]** is converted to a motion for a preliminary injunction and **is GRANTED.  Petitioner Siddiqi must be released from detention immediately under reasonable terms of supervision set forth in 8 U.S.C. § 1231(a)(3).**  Determining reasonable terms of supervision must not impede his immediate release.

IT IS FURTHER ORDERED that respondents must **file** and **serve** on defense counsel:

(1) notice of the date, time, and location of Siddiqi's release at least 24 hours before the release is set to occur so that arrangements for his travel can be made; and

(2) notice that Siddiqi's release was effectuated within three days of this order.

---

[56] *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting Fed. R. Civ. P. 65(c)).

[57] *Id.* (cleaned up).

[58] *See Bunnell v. Noem*, 2025 WL 3707588, at *9 (D. Nev. Dec. 22, 2025) (collecting cases in which "[c]ourts regularly waive security in cases like this one").

IT IS FURTHER ORDERED that this injunction will remain in effect, absent a successful motion to modify or dissolve it, until this court issues a final decision on the petitioner's habeas petition.

IT IS FURTHER ORDERED that counsel for respondents are directed to immediately provide notice of this order to the restrained parties they represent.

The Clerk of Court is directed to SEND a copy of this order to the Warden of Nevada Southern Detention Center in Pahrump, Nevada.

_____
U.S. District Judge Jennifer A. Dorsey
February 25, 2026