**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Wahid Masud Siddiqi,

Petitioner

v.

Pamela Bondi, et al.,

Respondents

Case No.: 2:25-cv-02614-JAD-BNW

**Order Granting Habeas Petition and Closing Case**

[ECF No. 8]

Petitioner Wahid Masud Siddiqi was admitted to the United States as a lawful permanent resident in 1992 but ordered removed to Afghanistan, his country of origin, in 2006.[1] The United States was unable to secure Siddiqi's removal in 2006, so he has been living in this country at liberty and under an order of supervision issued by the Department of Homeland Security (DHS).[2] But on November 26, 2025, Immigration and Customs Enforcement (ICE) officials arrested Siddiqi, and he has been detained at the Nevada Southern Detention Center ever since.[3] In December of 2025, Siddiqi filed a petition for a writ of habeas corpus seeking his immediate release from custody, as well as an emergency motion for a temporary restraining order (TRO) for his release pending a decision on the habeas petition.[4] Because Siddiqi had good reason to believe he would not be removed in the reasonably foreseeable future and the government failed to bring forth any evidence that efforts to remove him were underway, I

---

[1] ECF No. 8 at 4.

[2] *Id.* at 2.

[3] *Id.* at 5.

[4] *See generally id.*

converted the TRO to a preliminary injunction, granted it, and ordered Siddiqi's immediate release. The government released him on February 27, 2026.

I now grant Siddiqi's petition. Siddiqi was detained for at least six months with no good reason to believe his removal was forthcoming, and the government has failed to present any evidence suggesting otherwise. So I prohibit the respondents from re-detaining Siddiqi absent a demonstrable change in circumstances regarding ICE's ability to remove him to Afghanistan. He must remain released under an order of supervision.

**Background**

Wahid Masud Siddiqi is an Afghani citizen who entered the United States in 1992 purportedly to escape political unrest in Afghanistan.[5] He was ordered removed in 2006 and detained.[6] Approximately 94 days later, he was released under an order of supervision because his removal could not be effectuated.[7] On November 26, 2025, ICE arrested and re-detained him.[8] He alleges that he did not receive an informal interview stating the basis of this renewed detention.[9] Siddiqi thus filed a petition for a writ of habeas corpus requesting his release because he contends that his detention violates the United States Supreme Court's directives in *Zadvydas* and ICE violated its own applicable statutes and regulations.[10]

---

[5] ECF No. 8 at 4.

[6] *Id.* at 2.

[7] *Id.* at 2, 5. Siddiqi's counsel represented during the TRO hearing that this first period of confinement was for 94 days.

[8] *Id.* at 5.

[9] *Id.* at 17.

[10] *Id.* at 14–18.

The government counters that 8 U.S.C. § 1252(g) and § 1252(b)(9) strip this court of jurisdiction over this claim.[11] The government also argues that Siddiqi's prolonged-detention claim fails under *Zadvydas*, maintaining that his "current detainment is valid" and presumptively reasonable because he has only been re-detained for three months so "it is within the 6-month period."[12] The government also contends that Siddiqi's deportation is reasonably foreseeable because the United States has recently been able to remove other noncitizens to Afghanistan.[13]

## Discussion

### A. This court has jurisdiction to order relief related to Siddiqi's habeas petition.

The constitution provides that a writ of habeas corpus is "available to every individual detained in the United States."[14] That writ permits a person who is in custody to challenge the legality of his detention, and the court has the authority to release the petitioner if it determines that he is illegally detained. The court's habeas jurisdiction encompasses a noncitizen's challenge to his detention under the United States' immigration laws.[15]

The government sees it differently. It argues that this court is without jurisdiction because § 1252(g) bars district courts from reviewing the decision to "[c]ommence proceedings, adjudicate cases, or execute removal orders"[16] and § 1252(b)(9) channels review of final orders of removal to the federal courts of appeals.[17] But the government's § 1252(g) argument is

---

[11] ECF No. 15 at 7–11.

[12] *Id.* at 3, 11.

[13] *Id.* at 12–13 (citing ECF No. 15-4).

[14] *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art 1, § 9, cl. 2).

[15] *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003).

[16] 8 U.S.C. § 1252(g).

[17] *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1035 (9th Cir. 2016).

unavailing. Courts have habeas jurisdiction to consider challenges to the lawfulness of immigration-related detention.[18] And "§ 1252(g) does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders."[19] Rather, § 1252(g) is a "narrow" "discretion-protecting provision"[20] that bars challenges only to the three discrete actions enumerated in the statute.[21] The government's § 1252(b)(9) argument fares no better. § 1252(b)(9) similarly does not present a jurisdictional bar when petitioners are not "asking for review of an order of removal," "challenging the decision to detain them in the first place or to seek removal," or "challenging any part of the process by which their removability will be determined."[22] Siddiqi does not challenge the decision to commence the removal proceeding or to execute the removal order, but rather ICE's decision to detain him indefinitely. So this court has jurisdiction to review his petition.

**B. This nation's immigration laws permit a noncitizen's detention pending removal, but the United States Supreme Court has held that the detention period should not exceed six months without a significant likelihood of removal in the reasonably foreseeable future.**

***1. The government has authority to detain noncitizens after they have been ordered removed.***

The Immigration and Nationality Act (INA) and its implementing regulations establish a complex set of rules governing the government's authority to arrest, detain, order removed, and deport noncitizens. 8 U.S.C. § 1231(a) governs the detention of noncitizens who have been

---

[18] *See Zadvydas*, 533 U.S. at 687.

[19] *Ibarra-Perez v. United States*, 154 F.4th 989, 997 (9th Cir. 2025).

[20] *Id.* at 996.

[21] *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) ("The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'").

[22] *Jennings v. Rodriguez*, 583 U.S. 281, 294–95 (2018).

ordered removed. It establishes a 90-day "removal period" that begins on "(i) the date the order of removal becomes administratively final, (ii) if the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order," or the date the noncitizen is released from non-immigration detention.[23] During that 90-day period, detention is mandatory.[24] The statute gives the government the ability to detain a noncitizen beyond that removal period under § 1231(a)(6) if he is inadmissible, removable "as a result of violations of status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy,"[25] or has been determined "to be a risk to the community or unlikely to comply with the order of removal."[26] If those conditions aren't met, the government may release the noncitizen "subject to certain terms of supervision."[27]

***2. The Supreme Court has limited the government's statutory authority to indefinitely detain noncitizens awaiting removal.***

Section 1231(a)(6) contains no limit on the length of time that a noncitizen may be held post-removal period. But in *Zadvydas v. Davis*, the United States Supreme Court rejected the government's contention that noncitizens can be held indefinitely under § 1231(a)(6) because that interpretation "would raise a serious constitutional problem" under the Fifth Amendment's due-process clause.[28] To avoid its constitutional concerns, the High Court interpreted the statute

---

[23] 8 U.S.C. § 1231(a)(1)(B).

[24] 8 U.S.C. § 1231(a)(2)(A).

[25] *Zadvydas*, 533 U.S. at 682.

[26] 8 U.S.C. § 1231(a)(6).

[27] *Zadvydas*, 533 U.S. at 682 (quoting 8 U.S.C. § 1231(a)(6)) (cleaned up).

[28] *Id.* at 690.

to permit continued detention only if a noncitizen's removal is "reasonably foreseeable."[29] It determined that six months of post-removal-period detention is presumptively reasonable.[30] But after six months, the noncitizen must "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" to show that his prolonged detention exceeds the government's statutory authority and that he should be released from ICE custody.[31] If the noncitizen meets that burden, "the government must respond with evidence sufficient to rebut that showing."[32] And as "the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink."[33]

### ***3. Siddiqi has provided good reasons to believe that he will not be removed in the reasonably foreseeable future.***

The parties agree that the *Zadvydas* burden-shifting framework triggers at six months,[34] but they dispute whether Siddiqi's multiple periods of detention mean he has been detained for six months under *Zadvydas*.[35] District courts within the Ninth Circuit have seemingly reached a consensus that the period of post-final removal order detention is at least cumulative.[36] Otherwise, the government could detain, release, and re-detain noncitizens ad nauseam without

---

[29] *Id.* at 699.

[30] *Id.* at 701.

[31] *Id.*

[32] *Id.*

[33] *Id.* (cleaned up).

[34] *Zadvydas*, 533 U.S. at 701.

[35] *See* ECF Nos. 10, 15.

[36] *See, e.g.*, *Nguyen v. Warden of Golden State Annex Det. Facility*, 2026 WL 292874, at *2 (E.D. Cal. Feb. 4, 2026) (collecting cases).

technically violating *Zadvydas*.[37] The sole unpublished, out-of-circuit district court case that the Government cites in its response rejected only the notion that the six-month clock runs after the final order of removal regardless of whether the noncitizen is detained or not.[38] It did not address whether a detainee's time in detention should be aggregated under *Zadvydas*.[39] So I find that Siddiqi has been detained in the aggregate for longer than six months based on his 2006 detention and his recent re-detention, taking this case out of the presumptively reasonable period of detention established by *Zadvydas*.

Siddiqi thus bears the initial burden of showing that there are "good reasons to believe that there is no significant likelihood of removal in the reasonably foreseeable future."[40] To meet his burden, Siddiqi submits that he was ordered removed in 2006 and ICE has been unable to remove him for approximately two decades.[41] Siddiqi also alleges that ICE cannot remove him to Afghanistan and that ICE has previously been unable to obtain travel documents for him.[42] Siddiqi's counsel represented at the hearing that part of the issue is that "Afghanistan doesn't

---

[37] *See, e.g.*, *Shalala v. Mattos*, 2025 WL 3568234, at * 6 (D. Nev. Dec. 14, 2025) (considering the "full amount of time that Petitioner has spent in immigration detention since he was ordered removed" because "[o]therwise, the government could simply circumvent the INA by releasing and re-detaining citizens such that they never reach six months of continuous detention"); *Nguyen v. Scott*, 796 F. Supp. 703, 722 (W.D. Wash. 2025) (noting that, "under the reasoning of *Zadvydas*, a series of releases and re-detentions by the government . . . in essence results in an indefinite period of detention, albeit executed in successive six-month intervals").

[38] ECF No. 15 at 12 (citing *Tanha v. Warden, Baltimore Det. Facility*, 2025 WL 2062181 (D. Md. July 22, 2025)).

[39] *See Tanha*, 2025 WL 2062181, at *7 ("It strikes this court as an illogical, if not unreasonable, extension of *Zadvydas* to suggest that where the Government, as it did here, issues a non-citizen an [order of supervision], the 6-month post-removal period clock nonetheless starts to tick while the non-citizen is release.").

[40] *Zadvydas*, 533 U.S. at 701.

[41] ECF No. 8 at 14.

[42] *Id.* at 5.

recognize him," and that Siddiqi was told by ICE that Afghanistan won't authorize travel documents for him. I find that Siddiqi's allegations are sufficient to show a good reason to believe that he is not likely to be removed in the reasonably foreseeable future.

The government fails to meet its shifted burden to "respond with evidence"[43] rebutting Siddiqi's showing. The only evidence that the government cites in support is some generalized data showing that ICE deported individuals to Afghanistan during the years 2023-2025.[44] At the hearing on Siddiqi's TRO motion, counsel for the government stated that the government contacted the Afghani embassy but learned only that Siddiqi's case is still pending and there has been no movement on it. Counsel otherwise conceded that no other evidence supports the contention that Siddiqi will be removed in the reasonably foreseeable future. The government's highly generalized, unparticularized evidence coupled with the "still pending" status at the embassy does not meet the government's burden to show that there is a significant likelihood that Siddiqi himself will be removed in the reasonably foreseeable future. So Siddiqi's habeas petition on this ground is granted and I prohibit the federal respondents from re-detaining him absent proof of changed circumstances demonstrating that his removal to Afghanistan is significantly likely to occur in the reasonably foreseeable future. And because his continued release is warranted based on this showing alone, I do not address Siddiqi's alternative bases for relief.[45]

---

[43] *Zadvydas*, 533 U.S. at 701.

[44] ECF No. 15 at 12–13 (citing ECF No. 15-4).

[45] *Zadvydas*, 533 U.S. at 699–700 (noting that "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute" and holding that, "[i]n that case, of course, the [noncitizen's] release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances").

## Conclusion

IT IS THEREFORE ORDERED that petitioner Wahid Masud Siddiqi's amended petition for a writ of habeas corpus under 28 U.S.C. § 2241 **[ECF No. 8] is GRANTED**. **The federal respondents are enjoined from re-detaining Wahid Masud Siddiqi absent proof of changed circumstances making his removal to Afghanistan reasonably foreseeable.** The Clerk of Court is directed to ENTER JUDGMENT accordingly and CLOSE THIS CASE.

_______________________________
U.S. District Judge Jennifer A. Dorsey
August 13, 2026